**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| GLORIA D. GREEN,<br>　　　　　　Appellant, | DOCKET NUMBER<br>AT-844E-22-0166-I-1 |
| 　　　　v. | |
| OFFICE OF PERSONNEL<br>　MANAGEMENT,<br>　　　　　　Agency. | DATE: June 26, 2023 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Gloria D. Green, Selma, Alabama, pro se.

Heather Dowie, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1　　The appellant has filed a petition for review of the initial decision, which affirmed the reconsideration decision of the Office of Personnel Management (OPM) denying her application for a disability retirement annuity under the Federal Employees' Retirement System (FERS). For the reasons discussed

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

below, we GRANT the appellant's petition for review, REVERSE the initial decision and OPM's reconsideration decision, and ORDER OPM to award a disability retirement annuity to the appellant.

## BACKGROUND

¶2       The appellant worked for the U.S. Army Corps of Engineers (COE) from August 7, 2017, until she resigned effective March 13, 2021.  Initial Appeal File (IAF), Tab 5 at 29, 42.  At the time of her resignation, she was an Administrative Support Assistant at COE's Hydropower Branch in Mobile, Alabama.  *Id*. at 42. Her duties included providing clerical and administrative support in matters such as timekeeping, purchasing/procurement, supply management, travel, personnel management, and inventory control.  *Id*. at 52.  On March 4, 2021, she applied for disability retirement under FERS based on major depression and anxiety.  *Id*. at 31, 35.

¶3       According to the appellant's medical documentation, she has suffered from anxiety since at least 2005.  *Id*. at 107.  In 2013, the Department of Veterans Affairs determined that the appellant had a service-connected disability rating of 50% for major depressive disorder, effective September 2003.  *Id*. at 72. According to the appellant, her mental conditions negatively affect her concentration and cause her to have paranoid thoughts and experience heart palpitations, chest pain, and headaches, which resulted in a 17-day stay at a VA psychiatric hospital in 2019.  *Id*. at 17, 31.  She further notes that her conditions worsen when she is under increased stress, despite her continuous treatment and taking medication.  *Id*. at 31.

¶4       OPM issued a reconsideration decision, denying the appellant's application for a disability retirement annuity.  *Id*. at 4-6.  The appellant filed this appeal of OPM's reconsideration decision and requested a hearing.  IAF, Tab 1.  After the appellant failed to submit prehearing submissions and attend the prehearing conference, and failed to provide responsive information to an order to show

cause, the administrative judge cancelled the hearing and issued a close-of-record order.  IAF, Tabs 11, 14.  Following the appellant's response, the administrative judge issued an initial decision that affirmed OPM's decision.  IAF, Tab 15, Initial Decision (ID) at 2, 6.  She reasoned that the appellant did not show that her depression and anxiety were disabling conditions.  ID at 4-6.  She found that it was undisputed that the appellant completed 18 months of civilian service under FERS, suffered from depression and anxiety for many years and those conditions were expected to continue throughout her lifetime, and that the agency was unable to accommodate or reassign her.  ID at 4.

¶5     The appellant has filed a petition for review.  Petition for Review (PFR) File, Tab 1.  OPM has filed a response.  PFR File, Tab 3.

### DISCUSSION OF ARGUMENTS ON REVIEW

¶6     In an appeal from an OPM decision on a voluntary disability retirement application, the appellant bears the burden of proof by preponderant evidence.  *Thorne v. Office of Personnel Management*, 105 M.S.P.R. 171, ¶ 5 (2007); 5 C.F.R. § 1201.56(b)(2)(ii).  To be eligible for a disability retirement annuity under FERS, an employee must show the following:  (1) she completed at least 18 months of creditable civilian service; (2) while employed in a position subject to FERS, she became disabled because of a medical condition, resulting in a deficiency in performance, conduct, or attendance, or, if there is no such deficiency, the disabling medical condition is incompatible with either useful and efficient service or retention in the position; (3) the condition is expected to continue for at least 1 year from the date that the application for disability retirement benefits was filed; (4) accommodation of the disabling medical condition in the position held must be unreasonable; and (5) she did not decline a reasonable offer of reassignment to a vacant position.  5 U.S.C. § 8451(a); *Thorne*, 105 M.S.P.R. 171, ¶ 5; 5 C.F.R. § 844.103(a).

¶7       The administrative judge found, and the parties do not dispute on review, that the appellant met the 18-month service requirement under FERS at the time she filed her application, that her conditions were expected to continue for 1 year from that date, that providing her an accommodation in her position was unreasonable, and that she did not decline a reasonable offer of reassignment to a vacant position.  ID at 4; IAF, Tab 5 at 27-28, Tab 15 at 8-9.  We decline to disturb those findings.  The administrative judge affirmed OPM's denial of the appellant's disability retirement appeal on the basis that the appellant failed to prove that she had a disabling medical condition.  ID at 4-6; *see Thorne*, 105 M.S.P.R. 171, ¶ 5.  We disagree.

¶8       There are two ways to meet the statutory requirement that the employee "be unable, because of disease or injury, to render useful and efficient service in the employee's position." *Jackson v. Office of Personnel Management*, 118 M.S.P.R. 6, ¶¶ 6-7 (2012) (quoting 5 U.S.C. §§ 8337(a), 8451(a)(1)(B)).  First, an appellant can establish that the medical condition caused a deficiency in performance, attendance, or conduct by showing that her medical condition affects her ability to perform specific work requirements, prevents her from being regular in attendance, or causes her to act inappropriately.  *Id.*, ¶¶ 7-8.  Alternatively, the employee can show that her medical condition is incompatible with either useful and efficient service or retention in the position by showing that it is inconsistent with working in general, in a particular line of work, or in a particular type of work setting.  *Id.*

¶9       The administrative judge found that the appellant failed to demonstrate that her depression and anxiety caused deficiencies in her performance, conduct, or attendance.  ID at 4-6.  The administrative judge also concluded that the appellant failed to establish that her medical condition was incompatible with useful or efficient service; however, she did not explain her reasoning.  ID at 6.  Because we disagree with the administrative judge and find that the appellant did demonstrate that her depression and anxiety caused deficiencies in at least her

performance and attendance, we need not reach the issue of whether her medical conditions were inconsistent with working in general, in a particular line of work, or in a particular type of work setting.[2]

The administrative judge erred in finding that the appellant failed to establish that her medical conditions caused a deficiency in performance and attendance.

¶10     In concluding that the appellant had failed to establish that her medical conditions caused a deficiency in performance, conduct, or attendance, the administrative judge acknowledged that the appellant's depressive paranoid behaviors impacted her work. ID at 6. However, she found that absent additional medical evidence from the appellant, she could not conclude that the appellant was disabled by her conditions. *Id.* This determination was in error.

¶11     Although objective medical evidence must be considered if available, such evidence is not required to establish disability. *Confer v. Office of Personnel Management,* 111 M.S.P.R. 419, ¶ 9 (2009) (citing *Vanieken-Ryals v. Office of Personnel Management*, 508 F.3d 1034, 1040-44 (Fed. Cir. 2007)). The Board will consider all pertinent evidence in determining an appellant's entitlement to disability retirement:  objective clinical findings, diagnoses and medical opinions,

---

[2] On review, the appellant alleges for the first time that she also suffered from a "sleep disorder (Obstructive Sleep Apnea)," which negatively affected her performance of her job duties. PFR File, Tab 1 at 5. Other than this allegation and general claims in the record below that she does not sleep well, there is no evidence in the record related to a sleep apnea condition. The appellant also did not include it in her disability retirement application. IAF, Tab 5 at 31. Generally, the Board will not consider evidence relating to a different or additional medical condition that was not the subject of the appellant's application to OPM. *Rozar v. Office of Personnel Management*, 61 M.S.P.R. 136, 140 (1994). An exception to this general rule exists if there is sufficient evidence that the newly raised condition was related to the condition on which the application was based and, thus, is not a totally different or additional condition. *Gardner v. Office of Personnel Management*, 91 M.S.P.R. 391, ¶ 11 (2002) (citing *Chappell v. Office of Personnel Management,* 79 M.S.P.R. 302, ¶ 6 (1998)). Because we conclude, below, that the appellant has proven that her depression and anxiety were disabling, we decline to make a finding regarding whether the appellant's sleep apnea is related to those conditions.

subjective evidence of pain and disability, and evidence relating to the effect of the applicant's conditions on her ability to perform the duties of her position. *Henderson v. Office of Personnel Management*, [117 M.S.P.R. 313](), ¶ 19 (2012). Nothing in the law mandates that a single provider tie all of this evidence together. *Id.* For example, if the medical provider sets forth clinical findings, a diagnosis, and a description of how the medical condition affects the appellant's activities in general terms, the Board could consider that evidence, together with the appellant's subjective account of how the condition has affected her ability to do her job and her daily life, testimony or statements from supervisors, co-workers, family members, and friends, and the appellant's position description to conclude that the appellant's medical conditions were disabling. *Id.*

¶12    Considering the evidence as a whole, we find that the appellant's medical history does roughly correlate with her performance and attendance deficiencies. The appellant alleged that her depression and anxiety caused her to have paranoid thoughts that affected her ability to concentrate at work and miss deadlines, resulting in performance deficiencies. IAF, Tab 5 at 17; PFR File, Tab 1 at 5. In her disability retirement application, she explains that she believed that her coworkers and supervisors were "plotting" and "scheming" against her. IAF, Tab 5 at 31. She claims that her supervisors would have "people" communicate with her "only to gain information to conspire and use it against [her]." *Id.* They would then "twist" things she said in an effort to "breakdown her relationship[s] and isolate [her]" in order to "frame [her] in a work related crime, and VA fraud." *Id.* She describes that as a result of these thoughts she "spiraled out of control and feared for [her] life [when] traveling to work and at work." *Id.* For example, on April 23, 2019 she left work because she believed she was in "emanate [sic] danger," called ONSTAR vehicle security as she drove to a safe place, and was then admitted to a VA Psychiatric Hospital until May 10, 2019. *Id.* at 17.

¶13    The appellant's medical records corroborate that she was admitted to the VA Medical Center during this 17-day period and recommended not to return to

work for an additional week, until she was medically cleared. *Id*. at 111. Indeed, according to her supervisor, following her hospitalization, the appellant was not able to return to work until September 23, 2019. *Id*. at 30. Similarly, the appellant's daughter's statement further corroborates that the appellant's depression with psychotic features began to worsen in early 2019. IAF, Tab 15 at 10. The daughter describes an incident where she accidentally turned the gas stove on and the appellant thought "someone else had come in to do it intentionally." *Id*. She claims that the appellant made repeated statements about "feeling 'unsafe' being 'way out there in the woods,'" referring to her remote work location. *Id*. Her daughter also claims that the appellant was so fearful of her well-being that she would send pictures of herself "to show her clothing" before heading to work in the morning. *Id*.

¶14        The record reflects that during early 2020, at the beginning of the COVD-19 pandemic, the appellant's depression and psychotic features improved while she teleworked, although according to her daughter there was "always a sense of carefulness or mistrust about coworkers and supervisors." *Id*. However, the appellant's depressive psychotic thoughts began to worsen again in the 6 months leading up to her March 2021 resignation and disability retirement application. *Id*. According to the appellant, around the fall of 2020 when employees were instructed to return to the office 2 days a week, the appellant came in several days, but thereafter refused to work in the office because she believed that her coworkers and supervisor were trying to harm her and she became fearful for her life. IAF, Tab 5 at 17. For example, she implied on one occasion that her coworkers and supervisor tried to poison her or harm her when they insisted she eat food they cooked and were "looking at [her] and smirking, as if they had done something to the food." *Id*. She also claims that she believed that they turned off the camera monitor in the office parking and gate areas in order to tamper with her car, as she believed they had done on several other occasions. *Id*. Around

March 2021, she also believed she was being followed while driving home from work. IAF, Tab 1 at 11.

¶15     The evidence described above is consistent with the medical notes from the appellant's medical appointments prior to and following her March 2021 resignation and application for disability retirement. On January 14, 2021, the appellant contacted her provider, the Central Alabama Veterans Health Care System's Mental Health department, requesting to speak to her doctor about changing the dosage of her antipsychotic and depression medication, Quetiapine Fumarate (whose brand name is Seroquel). IAF, Tab 5 at 96. She stated that "[t]his past month was not good for work" and that she was "having trouble focusing and concentrating on [her] work." *Id*. Then, on March 18, 2021, shortly after her March 13 resignation, she again contacted her doctor to increase the dosage of her Seroquel. *Id*. at 95. That day, her doctor conducted a telemedicine appointment with the appellant and noted that the appellant stated that she was "not doing well, not resting . . . having a lot of problem[s] on the job, [she had] been depressed, stressed out." *Id*. at 89-90. She stated that the appellant was "having paranoid thoughts, felt that the people she worked with were plotting against her, playing games towards her well being." *Id*. at 91. She further noted that the appellant "felt she was in a hostile work environment" and "she was afraid for her safety." *Id*. She stated that the appellant provided an example about leaving work and thinking someone driving behind her was trying to harm her. *Id*.

¶16     First, the administrative judge determined that there was insufficient evidence to establish that the appellant's medical condition caused a deficiency in attendance, particularly because she was able to telework effectively in the spring of 2020 during the COVID-19 pandemic. ID at 4-5. We disagree.

¶17     There is sufficient evidence to conclude that the appellant's absences were due to her medical conditions. According to her supervisor's statement, the appellant's attendance deficiencies began in April 22, 2019, which correlates with

her hospitalization and resulting inability to work until September 23, 2019. IAF, Tab 5 at 30. The record also shows that, between April 2019 and March 2021, the appellant used 83 hours of annual leave, 60 hours of sick leave, 860 hours of leave without pay, and was absent without leave for about 24 hours. *Id*. Although the exact dates and reasons for the leave are not a part of the record, given the timing involved, we find that the appellant's excessive absences were, more likely than not, at least partly attributable to her depression and anxiety.

¶18 Second, the administrative judge found that the appellant had not established a performance deficiency because, in the appellant's response to OPM, she alleged that her performance deficiencies were due to harassment. ID at 4; IAF, Tab 5 at 16. We disagree and find sufficient evidence that the appellant's performance deficiencies were caused by her depressive paranoid thoughts and anxiety.

¶19 For instance, in the appellant's supervisor's statement, she indicated that the appellant's performance became unacceptable beginning in September 2018. IAF, Tab 5 at 29. Indeed, the appellant's most recent performance appraisal, covering the rating period from April 1, 2020, to March 31, 2021, demonstrates that the agency rated the appellant's performance at the lowest possible level, Unacceptable, leading up to her retirement and disability retirement application in March 2021. *Id*. at 55-60. Consistent with the appellant's statement that her conditions affected her ability to concentrate, meet deadlines, and made her paranoid in her communications with coworkers and supervisors, her supervisor noted that the appellant's critical elements of customer service and acquisition of supplies and equipment were unacceptably low, particularly due to her difficulty communicating with her supervisor and coworkers and timely placing and tracking purchase card orders. *Id*. at 30. Her supervisor further observes that the appellant's medical absences and performance deficiencies negatively impacted the agency's mission and work operations, and caused undue administrative burdens on other administrative personnel. *Id*.

¶20    Lastly, the administrative judge essentially gave no weight to the appellant's statement and her supervisor's statements that her work deficiencies were related to her medical conditions because the appellant claimed that her work deficiencies were due to her supervisor's harassment and her hostile work environment. ID at 4. This was error. The Board has rejected disability claims when the appellant's conditions were largely situational, i.e., based exclusively on her reaction to a particular workplace or in the context of what she perceives as a hostile work environment. *Luzi v. Office of Personnel Management*, 109 M.S.P.R. 79, ¶ 9 (2008); *Cosby v. Office of Personnel Management*, 106 M.S.P.R. 487, ¶¶ 7, 10 (2007). However, the Board has distinguished such circumstances from ones in which job-related stress precipitated and exacerbated an appellant's condition, which was itself disabling. *Kimble v. Office of Personnel Management*, 102 M.S.P.R. 604, ¶ 14 (2006) (finding that the appellant's work-related stress exacerbated her depression and anxiety to the point that her condition became disabling); *Thorne*, 105 M.S.P.R. 171, ¶ 15 (finding that the appellant's job-related stress precipitated and exacerbated his psychiatric condition to the point that it became disabling). Job-related stress resulting in mental impairments that prevent an employee from performing the duties required in her position can warrant the granting of disability retirement. *Kimble*, 102 M.S.P.R. 604, ¶ 14; *see Thorne*, 105 M.S.P.R. 171, ¶ 15.

¶21    Here, the medical evidence and statements do not support a finding that the appellant's depression and anxiety were a reaction to her particular workplace or harassment from her supervisor or coworkers. Rather, these conditions were apparent outside of the specific work environment at the COE, where she began working in 2017. The record shows that in April 2005 the appellant experienced a similar episode of depression with psychosis including "mostly paranoid delusions concerning her job," which also resulted in a 2-week psychiatric intensive day treatment program. IAF, Tab 5 at 104. The appellant's medical notes in October and March 2020 leading up to her resignation also show that she

was experiencing increased anxiety and work-related stress, which exacerbated her psychotic depression and anxiety. *Id*. at 31, 90, 100. Lastly, the appellant's most recent medical evidence from an appointment on April 22, 2022, shows that she has continued to suffer from depression and anxiety over a year after resigning and submitting her disability retirement application in March 2021. IAF, Tab 15 at 8-9; *see Bell v. Office of Personnel Management*, [87 M.S.P.R. 1](), ¶¶ 18-20 (2000) (finding that the appellant's problems with interpersonal contacts following her removal from the agency supported the conclusion that she was impaired beyond just her assignment under the supervisors who allegedly precipitated her psychiatric disorder). Thus, we do not find that her depression and anxiety were situational.[3]

¶22    Considering all of the evidence, we conclude that the appellant has shown by preponderant evidence that, while employed in a position subject to FERS, she became disabled from useful and efficient service. Accordingly, she has established her entitlement to a disability retirement annuity, and we reverse the administrative judge's initial decision and OPM's final decision.[4]

**ORDER**

¶23    We ORDER OPM to award the appellant disability retirement. OPM must complete this action no later than 20 days after the date of this decision.

---

[3] The administrative judge found that the appellant's medical conditions did not result in a deficiency in conduct, without providing an explanation for her finding. ID at 6. Because we find that the appellant established that her medical conditions caused deficiencies in attendance and performance, we do not reach the question of whether they also adversely impacted her conduct. *See Beeler-Smith v. Office of Personnel Management*, [112 M.S.P.R. 479](), ¶¶ 8-18 (2009) (determining that an appellant proved she was disabled based solely on a performance deficiency).

[4] Because we find that the appellant has established her entitlement to disability retirement benefits, we need not consider her remaining arguments on review that the administrative judge did not properly weigh her VA service-connected disability rating of 50% for major depressive disorder. PFR File, Tab 1 at 4. We also have not considered the appellant's new evidence submitted on review. *Id* at 7-10.

¶24     We also ORDER OPM to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order.  We ORDER the appellant to provide all necessary information OPM requests to help it carry out the Board's Order.  The appellant, if not notified, should ask OPM about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶25     No later than 30 days after OPM tells the appellant it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that OPM did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes OPM has not fully carried out the Board's Order, and should include the dates and results of any communications with OPM.  *See* 5 C.F.R. § 1201.182(a).

¶26     This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[5]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                          /s/ for                          
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.